## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

CRAIG TAPKE,

              Petitioner,            :        Case No. 1:09-cv-077

                                        District Judge Michael R. Barrett

   -vs-                            Magistrate Judge Michael R. Merz

                              :

TIM BRUNSMAN, Warden, Lebanon
 Correctional Institution,

              Respondent.

---

## REPORT AND RECOMMENDATIONS

---

       Petitioner Craig Tapke brings this habeas corpus action under 28 U.S.C. § 2254 to obtain

relief from his conviction and sentence in the Hamilton County Common Pleas Court on two counts

of rape and two counts of gross sexual imposition. He was sentenced to life imprisonment on one

count of rape and ten years on the second count with counts three and four being merged.

       Petitioner pleads the following grounds for relief:

> **GROUND ONE:** Petitioner was denied his Fourteenth Amendment
> right to due process of law and his right to a fair and impartial jury in
> his prosecution in state court, secured to him by the Sixth and
> Fourteenth Amendments to the U.S. Constitution. The trial court
> should have protected Petitioner, investigated the claim, and held an
> evidentiary hearing to ascertain whether Petitioner's jurors had slept
> during the trial, and whether Petitioner was prejudiced by the conduct
> of his jury.

> **Facts**: Petitioner's jurors slept throughout his trial. The trial court was
> notified of this fact prior to imposition of sentence by letters from
> spectators who had witnessed this juror misconduct. The trial court
> acknowledged receipt of the letters prior to sentencing, but did not
> notify either party of the allegations. There was no hearing into the
> claims, and the trial court proceeded to impose a life - plus sentence
> upon Petitioner.

**GROUND TWO**: Petitioner was denied the protection of his privilege against self-incrimination secured to him by the Fifth and Fourteenth Amendments to the U.S. Constitution by the denial of his motion to suppress his allegedly inculpatory statement.

**Facts:** Petitioner was interrogated by police officers using the "Reid Technique," an interrogation technique used by police for the last 40 or 50 years. The technique wrests false confessions or admissions from innocent suspects by instilling in them a fear of substantial punishment, without hope of escaping that punishment, and then holding out the possibility of very lenient treatment if the suspect "cooperates" and admits to conduct which seems innocuous, but in reality admits serious felonious conduct. The will of the suspect, who has committed no crime, to resist crumbles and he admits serious felonies, thinking he is admitting only slight misconduct.

**GROUND THREE**: Petitioner was denied his right to due process of law under the Fourteenth Amendment to the U.S. Constitution by the entry of judgments of convictions against him (1) in the absence of proof beyond a reasonable doubt of each and every element of the offenses of which he was found guilty and sentenced, and (2) that Petitioner was the person who committed those elements.

**Facts:** Petitioner was convicted of two counts of rape and two counts of gross sexual imposition. There was insufficient evidence that the offenses occurred at all, and that he was the perpetrator of the "offenses" with which he was charged.

Count 3, rape, and the gross sexual imposition counts (4 and 5) all were alleged to have occurred on November 20, 2004, when the purported victim was 13 years of age. The rape, or rapes, claimed in Count I were claimed to have occurred over a period of four years, beginning when the victim was 7 years old, and ending four years later when she and her mother moved out of Petitioner's house

.

The Court of Appeals found that when the victim was seven years old, "Petitioner began coming in her bedroom at night, at least two times a week .... She testified that he had put his fingers and his penis inside her vagina, that it hurt pretty bad, and that she would feel moisture on her legs afterward." Decision below, 1 14. This conduct occurred, she said, twice a week for about four years.';" 89, 90. Her mother testified that the girl had never given any indication of a problem with Petitioner, nor were there any complaints of pain or discomfort in her genital region- from 1998 to 2005. None.

But physical examination by Dr. Shapiro - when the purported victim was 13, revealed that the girl's hymen, indeed her entire genital area, was completely intact and completely undamaged in 2005, though the

girl testified that there were years of vaginal penetration by Petitioner's adult penis over and over, and over again. The doctor stated that it is not unusual for young girls who had been penetrated not to exhibit any damage to their genital area. This testimony was cited by the Court of Appeals in ruling that the evidence was sufficient, because Dr. Shapiro testified that "most victims of child sexual abuse had 'normal' examinations." Decision, 193.

According to the testimony of the victim, Petitioner would have thrust his adult penis into her vagina countless times in over 400 separate incidents beginning when she was only seven years old.! [sic] Not even Dr. Shapiro could maintain that this type of abuse on such a little girl would have no effect on her genitals, particularly her hymen. Surely this testimony by the victim is not such that any rational fact-finder could conclude that her testimony as to four years of vaginal rape was true. Not only the jury, but the court of appeals itself, has exhibited here an appalling degree of gullibility. But Appellant is the one paying the price.

**GROUND FOUR:**  Petitioner was denied his Sixth Amendment right to confront the witnesses against him, and to due process of law, by the use of testimonial statements made by the purported victim to personnel and social workers at a child abuse facility, personnel who did not testify.  Petitioner was thus denied the right to confront and cross examine those witnesses.

**Facts:** The trial court admitted into the record the statement given by the victim to those personnel, and the jury considered and weighed that statement (and a lot more inadmissible evidence as well). The victim testified that she could not recall the offenses of November 20, 2004, and the trial court permitted her to "refresh her recollection" by reviewing the file of the child abuse center, and especially the statements she gave to the personnel there. And, even after she had done so, and stated that her recollection had been refreshed, she testified that she could not remember those incidents.

Over objection, the trial court then admitted the statements into evidence, where the jury could read her testimonial comments, without hearing from the personnel to whom the statements were made, and without such personnel having been cross examined, contra to Petitioner's rights under the Sixth and Fourteenth Amendments, most recently set forth in *Crawford v. Washington*, 541 U.S. 36 (2004).

**GROUND FIVE:** The trial court violated Petitioner's right to due process of law under the Fourteenth Amendment to the U.S. Constitution when it took judicial notice that venue had been proved by the state as to one of the essential facts - venue proof of which

beyond a reasonable doubt by the state is necessary under Ohio law to a conviction of a criminal offense. This action amounted to a directed verdict for the state as to an essential element of the offenses charged in the first count, and shifted the burden of proof to the defense that venue had not been proved. The trial court thus denied Petitioner his Sixth Amendment right to a decision by his jury of each and every fact necessary to a conviction.

**Facts:** Under Ohio law, it was incumbent upon the state to prove beyond a reasonable doubt that the offenses charged in the first count - the hundreds of rapes with which Petitioner was charged while he and the victim's mother were residing in Cheviot, Hamilton County, Ohio - did indeed occur in Hamilton County. When the prosecutor asked the testifying victim whether Cheviot was in Hamilton County, she replied that she had no idea. The trial court immediately interjected that the court was taking judicial notice that Cheviot is in Hamilton County, Ohio. This action relieved the state from its obligation to prove each essential element of the offenses charged, and switched to the defense the burden of proof of the nonexistence of an essential fact which it was the burden of the state to prove.

The Court of Appeals acknowledged that this action by the trial court was error, but held it to be harmless error.

**GROUND SIX:** The trial court violated Petitioner's right to due process of law under the Fourteenth Amendment to the U.S. Constitution when it took judicial notice that an essential element of an offense - that the victim was not the spouse of the Defendant - was proved, stating in open court that it was "obvious" the Petitioner and the purported victim were not husband and wife. This action amounted to a directed verdict for the state as to an essential element of the offenses charged in the first count, and shifted the burden of proof of nonexistence of the element to the defense.

The trial court thus denied Petitioner his Sixth Amendment right to a decision by his jury of each and every fact necessary to a conviction.

**Facts:** One of the essential elements of the offenses charged is that the victim is not the spouse of the offender. In its instructions to the jury, the trial court instructed the jury that it was "obvious" that the victim was not the spouse of the Petitioner. The trial court thus directed a verdict for the state as to that element, relieving the state of its burden of proof, and depriving Petitioner of his Sixth Amendment right to a jury determination of the issue, and of his Fourteenth Amendment due process of law right to require the state to prove this essential factual element of the offense. As with the venue issue, the trial court and switched to the defense the burden of

proof of the nonexistence of an essential fact which it was the burden of the state to prove.

**GROUND SEVEN:** Petitioner was denied his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the U.S. Constitution, by the failures of his trial counsel to object, move for mistrial, or otherwise bring to the attention of the trial court the many and varied violations of Petitioner's federal constitutional rights which occurred at his trial.

**Facts:** Defense counsel failed to object, move for mistrial or otherwise protect Petitioner's due process right to a fair trial, in the instances complained of herein, and otherwise as well. In addition to the deprivation of a fair trial secured by the due process clause of the Fourteenth Amendment, Petitioner suffered the loss of his right to the effective assistance of counsel, under *Strickland v. Washington*, 466 U.S. 688, 104 S.Ct. 2052.

(Petition, Doc. No. 1.)

## Procedural Default

The Warden does not assert a statute of limitations defense or that any of the grounds for relief are unexhausted.  However he does assert that Grounds One, Five, and Six are procedurally defaulted.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *see also Simpson v. Jones,* 238 F. 3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977);

*Engle v. Isaac*, 456 U.S. 107 (1982).  Absent cause and prejudice, a federal habeas petitioner who

fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.

*Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);

*Engle v. Isaac*, 456 U.S. 107 (1982);  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  *Wainwright*

replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a

habeas claim is precluded by procedural default.  *Eley v. Bagley*, 604 F.3d 958, (6th Cir. 2010)

*Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138

(6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407

(2001);.

> First the court must determine that there is a state procedural rule that
> is applicable to the petitioner's claim and that the petitioner failed to
> comply with the rule.
>
> . . . .
>
>
>
> Second, the court must decide whether the state courts actually
> enforced the state procedural sanction, citing *County Court of Ulster
> County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777
> (1979).
>
>
> Third, the court must decide whether the state procedural forfeiture
> is an "adequate and independent" state ground on which the state can
> rely to foreclose review of a federal constitutional claim.
>
>
> Once the court determines that a state procedural rule was not
> complied with and that the rule was an adequate and independent
> state ground, then the petitioner must demonstrate under *Sykes* that
> there was "cause" for him to not follow the procedural rule and that
> he was actually prejudiced by the alleged constitutional error.

*Maupin,*785 F.2d, at 138.

Ground One (sleeping jurors), Ground Five (judicial notice of venue), and Ground Six (judicial notice that victim was not Petitioner's spouse) were raised as Mr. Tapke's second, sixth, and seventh assignments of error on direct appeal. Tapke's family wrote letters to the trial judge alleging jurors slept during trial after verdict but before sentencing. The court of appeals found the claim waived by counsel's failure to raise it at sentencing and reviewed the claim for plain error, finding none. *State v. Tapke*, 2007 Ohio 5124, ¶¶ 39-40, 2007 Ohio App. LEXIS 4525 (Ohio App. 1st Dist. Sept. 28, 2007). The court found the judicial notice of venue claim waived by lack of a contemporaneous objection and again found no plain error. *Id.* at ¶¶ 56-60. As to the spousal relationship claim, again the court of appeals found waiver by lack of objection and no plain error. *Id.* at ¶¶ 61-64.

Ohio has a contemporaneous objection rule that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471, 166 N.E.2d 379 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162, 694 N.E.2d 932 (1998). The court of appeals enforced various instances of that rule in this case.

As to the sleeping juror issue (evidence of which was embodied in unsworn letters from interested witnesses - members of Petitioner's family), Petitioner asserts in his Traverse (Doc. No. 21, PageID 1159) that there was no requirement for defense counsel to act since the judge had already ruled. But at that point defense counsel could have embodied an objection in a motion for mistrial or for new trial based on misconduct of the jury. See Ohio R. Crim. P. 33(A)(2). He did not do so and the court of appeals held this waiver against him.

The court of appeals also found the judicial notice of venue waived by failing to object. Petitioner argues here there was no obligation to make a contemporaneous objection because the objection was preserved by Mr. Tapke's motion for judgment of acquittal (Traverse, Doc. No. 21,

PageID 1169, citing Transcript at 615.)  What Mr. Magnus, the trial attorney, said at that point was "I'd like to renew the Rule 29 motion for much the same reasons as before.  There's been absolutely no proof of venue." *Id.*  The trial judge responded "Well, I think there is.  The Rule 29 motion is overruled." *Id.*  Objecting that there is no proof of venue is not the same as objecting to the trial judge's taking judicial notice that a particular town is in Hamilton County, which is only a sub-part of the venue question.  Thus the court of appeals ruling that Mr. Magnus made no objection on the judicial notice point is an accurate finding of what the trial record shows which Petitioner has not overcome by clear and convincing evidence that the record shows something else.  On the question of venue as a whole, the court of appeals found there was sufficient evidence to establish venue. *State v. Tapke, supra,* at ¶¶ 58-60.

As to Ground Six, Petitioner also disputes the court of appeals finding that there was a lack of contemporaneous objection by claiming there is no obligation or opportunity to object when a jury instruction as read differs from the written set of instructions the judge has shared with counsel. Ohio R. Crim. P. 30 provides in pertinent part:

> On appeal, a party may not assign as error the giving or failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.

While counsel are permitted by the same rule to make written requests for instructions and the judge is required to inform counsel of his or her proposed action on the requests prior to argument, the Rule preserves the obligation to call alleged error in the instructions actually given to the attention of the court before the jury begins to deliberate.  Thus Ohio has a relevant contemporaneous objection rule and it was enforced against Petitioner by the court of appeals.

At the third stage of the *Maupin* analysis, the Sixth Circuit has repeatedly held that Ohio's contemporaneous objection rule is an adequate and independent state ground of decision. *Nields*

*v. Bradshaw*, 482 F.3d 442 (6th Cir.  2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005);

*Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir.

2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29

(1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  It has also held that plain

error review does not waive procedural defaults.  *Cooey v. Coyle,* 289 F.3d 882, 897 (6th Cir. 2002);

*Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000).  A state appellate court's review for plain error is

enforcement, not waiver, of a procedural default.  *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir.

2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525

(6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F. 3d 239

(6th Cir. 2001), citing *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000)(plain error review does

not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir.

2003).

Petitioner also asserts that at the fourth step of the *Maupin* analysis, he can show cause and

prejudice to excuse his procedural defaults, to wit, ineffective assistance of trial counsel.  A habeas

petitioner "can overcome a procedural default by showing (a) cause for the default and (b) actual

prejudice from it." *Hall v. Vasbinder,* 563 F.3d 222, 236 (6th Cir. 2009); *Bonilla v. Hurley*, 370 F.3d

494, 498 (6th Cir. 2004)(quoting *Murray v. Carrier*, 477 U.S. 478 (1986)).  Attorney error amounting

to ineffective assistance of counsel does constitute cause.  *Murray v. Carrier,* 477 U.S. 478, 488

(1985); *Howard v. Bouchard,* 405 F.3d 459, 478 (6th Cir. 2005); *Lucas v. O'Dea*, 179 F.3d 412, 418

(6th Cir. 1999); *Gravley v. Mills,* 87 F.3d 779, 785 (6th Cir. 1996).  However, the ineffective

assistance claim cannot be presented as cause if it was procedurally defaulted in the state courts,

unless one of the standard excuses for that procedural default exists, to wit, actual innocence or

cause and  prejudice. *Edwards v. Carpenter,* 529 U.S. 446 (2000).

On direct appeal, Mr. Tapke claimed his trial attorney was ineffective for failing to observe

the sleeping juror or to call that behavior to the judge's attention (Assignment of Error 3) and that "trial counsel should have objected to the prosecutor's misconduct, the juror misconduct, and the trial court's judicial notice of venue." (Assignment of Error 13 as paraphrased by the court of appeals at *State v. Tapke, supra*, ¶ 96.) Thus any claim that the procedural default of not objecting regarding the instruction on spousal relationship is  excused by ineffective assistance of trial counsel lacks merit because Ohio's *res judicata* rule in criminal cases requires that ineffective assistance of trial counsel claims which can be shown from the record must be raised on direct appeal.  *State v. Perry*, 10 Ohio St. 2d 175 (1967).

On Assignment of Error 3, the court of appeals held:

> [*P42] Finally, Tapke argues that his trial counsel was ineffective for not noticing the sleeping jurors. But reversal of a conviction based upon the ineffective assistance of counsel requires a showing by the defendant that his counsel's performance was deficient and that he was prejudiced by the deficiency. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. We cannot say in this case that defense counsel's performance was deficient. There is no evidence in the record that defense counsel was made aware of sleeping jurors and then chose not to inform the trial court.

*State v. Tapke*, 2007 Ohio 5124, ¶ 42 2007 Ohio App. LEXIS 4525 (Ohio App. 1st Dist. Sept. 28, 2007).

The Supreme Court has elaborated on the standard of review of state court decisions on claims later raised in federal habeas corpus:

> The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law.  See *Williams v. Taylor*, 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).   To these ends, § 2254(d)(1) provides:
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

10

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S., at 404-405, 120 S.Ct. 1495. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Id.,* at 405-406, 120 S. Ct. 1495. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id.,* at 407-408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409- 410, 120 S.Ct. 1495. See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685, 693-94 (2002).

AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. *Williams v. Taylor, supra,* at 405; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam).* A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* 544 U.S. 133, 134 (2005).  The court of appeals' determination that failure to raise the sleeping juror question was not ineffective assistance of trial counsel applied the governing federal *Strickland* standard which *Bradley* adopted as part of Ohio jurisprudence.

Nothing in the Traverse persuades this Court that the court of appeals' decision on Assignment of Error 3 was an unreasonable application of *Strickland*.  Nothing in the Traverse suggests the court of appeals incorrectly read the record as to what Mr. Magnus observed during trial.  The proof of sleeping jurors is, again, post-verdict unsworn correspondence from Mr. Tapke's family members.  There is certainly no showing that those allegations would have held up under cross-examination or would have shown a serious pattern of misconduct by jurors such that any reasonable attorney would have moved for a new trial on that basis.

As to the judicial notice of venue claim, Petitioner did assert ineffective assistance of trial counsel in his counsel's failure to object.  This was part of his Assignment of Error 13.  The Court of Appeals reviewed the merits of the underlying claim for plain error and found there was no prejudicial error.  It therefore overruled the thirteenth assignment of error on grounds no prejudicial error had been shown.  *State v. Tapke, supra*, ¶ 96.  This Court agrees.  While it is not proper procedure to take judicial notice of an element in a criminal case, as the court of appeals admonished here, there can be no doubt that as a general matter the fact that Cheviot, Ohio, is located entirely within Hamilton County, Ohio, is both generally known in Hamilton County and also capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  See Ohio R. Evid. 201(B).  The fact that D.S. did not know is hardly determinative.  Petitioner does not suggest now suggest any part of Cheviot is not in Hamilton County or that any of the events testified to happened anyplace besides Cheviot.  Therefore the court of appeals did not apply *Strickland v. Washington, supra*, in an objectively unreasonable manner in concluding there

was no ineffective assistance of trial counsel as alleged in this part of Assignment of Error 13.

Accordingly, the Court concludes Petitioner's First, Fifth, and Sixth Grounds for Relief are procedurally defaulted and should be dismissed with prejudice.

## Merits Analysis

Respondent concedes that the remaining Grounds for Relief are preserved for merit consideration and they are analyzed seriatim below.

## Ground Two: Failure to Suppress Statement to the Police

In Ground Two Petitioner asserts the trial court violated his constitutional privilege against self-incrimination by admitting the inculpatory statement he made to the Sheriff's deputies. This was Petitioner's fourth assignment of error on direct appeal on which the court of appeals held:

> [*P44] In his fourth assignment of error, Tapke contends that the trial court erred by overruling his motion to suppress his confession, by admitting it into evidence, and by playing it for the jury.
>
> [*P45] With respect to the motion to suppress, we note that only Detective Peak testified at the suppression hearing; Tapke did not. Although Tapke argued at the hearing that his confession was involuntary because he had been coerced, the trial court found that there was no evidence demonstrating how the police officers had overcome Tapke's will and forced him to confess.
>
> [*P46] We review the voluntary nature of Tapke's confession under a totality-of-the-circumstances standard. *State v. Clark* (1988), 38 Ohio St.3d 252, 261, 527 N.E.2d 844. The totality of the circumstances includes "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *In re Watson* (1989), 47 Ohio St.3d 86, 90, 548 N.E.2d 210, *quoting State v. Edwards* (1976), 49 Ohio St. 2d 31, 358 N.E.2d 1051, paragraph two of the syllabus.

> Absent evidence that a defendant's will was overborne and that his capacity for self-determination was critically impaired because of coercive police conduct, the decision of a suspect to waive his Fifth Amendment privilege is considered voluntary. *State v. Dailey* (1990), 53 Ohio St.3d 88, 91-92, 559 N.E.2d 459.
>
> [*P47]  Although both parties have argued about evidence that was presented at trial, we may only consider and review the evidence that was presented at the suppression hearing.
>
> [*P48]  At the hearing, it was established that Tapke was cooperative with the police, had agreed to talk with them, and had driven himself to the HCSO. Once there, he was informed of his *Miranda* rights and signed a waiver form that explained those rights. A copy of the taped confession presented at the hearing verified that Tapke had been informed of his *Miranda* rights. Detective Peak testified that there was no indication that Tapke was under the influence of alcohol or drugs, and that he appeared mentally competent and was able to read and write. Although the interview lasted four hours and Tapke did not use the bathroom or eat during that time, we cannot say that his will was overcome, in light of the fact that Tapke only confessed to a "touching" of D.S. and continued to deny any rape allegations. (Detective Peak testified that Tapke had been informed of  the allegations D.S. had made before he confessed.)
>
> [*P49]  Once the trial court has determined that a confession has been made voluntarily, it is properly admitted at trial, and the trier of fact has the responsibility to determine how much weight to give it. Further, we find no error in playing the tape for the jury and admitting the transcript into evidence. See Evid.R. 1002; *State v. Fitzgerald*, 9th Dist. No. C.A. 23072, 2007 Ohio 701. Accordingly, we overrule the fourth assignment of error.

*State v. Tapke, supra.*

Respondent argues this is a not objectively unreasonable application of clearly established Supreme Court law, relying particularly on *Moran v. Burbine*, 475 U.S. 412 (1986); *Colorado v. Connelly*, 479 U.S. 157 (1987); *Reck v. Pate,* 367 U.S. 433 (1961); and *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)(Return of Writ, Doc. No.8, PageID 70).

Although this claim was pled as a violation of the privilege against self-incrimination (Petition, Doc. No. 1, PageID 11), Petitioner argues it in the Traverse as a violation of due process, relying on *Rochin v. California*, 342 U.S. 165 (1952); *Lisenba v. California*, 314 U.S. 219 (1941);

*Blackburn v. Alabama*, 361 U.S. 199 (1960); and *Reck v. Pate*, 367 U.S. 433 (1961).[1]  None of the Supreme Court authority now relied on was cited to the court of appeals (See Appellant's Brief, Ex. 12 to Return of Writ, PageID 135-143.)  Instead, Petitioner's Fourth Assignment of Error was argued largely in terms of how the Sheriff's deputies had used something called The Reid Technique® in obtaining Mr. Tapke's confession.  The argument on direct appeal focused largely on testimony given at trial about how The Reid Technique® is used and testimony by defense expert Richard Ofshe about its tendency to produce false confessions.  In the Traverse, Petitioner also focuses largely on trial testimony, e.g., asserted threats of bodily harm (Traverse, Doc. No. 21, PageID 1162, citing Tr. 499), the "feeding" of admissions to Petitioner (*Id.* PageID 1163, citing Tr. 511-514), promises of assistance *(Id.* citing Tr. 503), and telling Petitioner he had failed a voice stress analysis (*Id.* , citing Tr. 508-510).  None of this testimony was given at the hearing on the motion to suppress; indeed, Mr. Tapke did not testify at that hearing.  As the court of appeals noted, although the trial evidence was argued extensively on direct appeal, the court was limited to considering evidence presented at the suppression hearing.  *State v. Tapke, supra*, ¶ 47.

Under Ohio law, a motion to suppress illegally obtained evidence must be made pretrial. Ohio R. Crim. P. 12(C)(3).  Indeed, a defendant is constitutionally entitled to a judge's determination, before a jury hears it, that a confession is voluntary.  *Jackson v. Denno,* 378 U.S. 368 (1964).  *Jackson* undergirds the court of appeals' determination that it could only consider evidence given on the motion to suppress.  It was perfectly proper, indeed constitutionally mandated, to allow Petitioner to introduce evidence at trial to attempt to persuade the jury not to believe the confession because of the tactics used to obtain it.  *Crane v. Kentucky*, 476 U.S. 683 (1986).  But that does not imply that the trial court or the court of appeals violated Petitioner's constitutional rights by not

_____

[1]Mr. Tapke was represented on direct appeal by the same attorney whom filed the Petition on his behalf.  That counsel was forced to retire for medical reasons and current counsel was appointed by the Court.  (Doc. Nos. 6, 13.)

suppressing the confession and granting a new trial on the evidence given at trail undermining the confession.

As noted above, Petitioner's argument on direct appeal focused on The Reid Technique® and that focus is repeated in the wording of Ground Two and in the argument in the Traverse.  But Petitioner's counsel admitted on direct appeal that the technique "is only rarely mentioned in case law and has never been discussed in detail." (Appellant's Brief, Ex. 12 to Return of Writ, PageID 137. n. 1).  *A fortiori* it is not a police method which has been condemned in Supreme Court jurisprudence, unlike, for example, the police-induced vomiting in *Rochin, supra*.  Therefore this Court cannot say that the court of appeals opinion is an unreasonable application of clearly established Supreme Court law.  Ground Two should be denied on the merits.

### Ground Three: Insufficient Evidence

In Ground Three, Petitioner asserts he was convicted on insufficient evidence, in particular that the charged offenses occurred at all or that he was the person who committed them (Petition, Doc. No. 1, PageID 11-12).  This claim was raised Assignments of Error 10 and 12 on direct appeal, on which the court of appeals held:

> X. Sufficiency and Weight of the Evidence
>
> [*P85]  In his tenth and eleventh assignments of error, Tapke contests the sufficiency and the weight of the evidence underlying his convictions. In his twelfth assignment of error, Tapke maintains that the trial court erred in denying his Crim.R. 29 motion for an acquittal. For the following reasons, we overrule all three assignments of error.
>
> [*P86]  When reviewing the denial of a Crim.R. 29 motion, this court employs the same standard of review used in reviewing a challenge to the sufficiency of the evidence. See *State v. Jordan*, 167 Ohio App.3d 157, 2006 Ohio 2759, 854 N.E.2d 520, at P49. We must determine "[w]hether after viewing the probative evidence and

inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717. When reviewing a challenge to the manifest weight of the evidence, this court sits as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541. We review the record, weigh the evidence, consider the credibility of witnesses, and determine whether the jury clearly lost its way and created a manifest miscarriage of justice. *Id.*

[*P87] R.C. 2907.02(A)(1)(b), Ohio's rape statute, provides, "[N]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." "Sexual conduct" means "vaginal intercourse * * * and, without privilege to do so, the insertion, however slight, of any part of the body * * * into the [vagina]." R.C. 2907.01(A).

[*P88] R.C. 2907.05(A)(4) proscribes gross sexual imposition: "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender to have sexual contact with the offender * * * when * * * "the other person is less than thirteen years of age." "Sexual contact" means "any touching of an erogenous zone of another * * * including * * * the thigh, genitals [and] pubic region." R.C. 2907.01(B).

[*P89] Our review of the record leads us to conclude that the state presented sufficient evidence that Tapke had raped and inappropriately touched D.S. in a sexual manner during the time that she lived with him and her mother on Trevor Avenue, and on November 20, 2004.

[*P90] D.S. testified that she had lived with Tapke and her mother from the time she was in kindergarten through the third grade on Trevor Avenue in Cheviot. She said that, during that time, Tapke would enter her bedroom late at night, remove her clothes, and place his fingers, and sometimes his penis, inside her vagina, which she described as hurting "pretty bad." She also testified that she felt moisture on her legs afterwards. Although Tapke argues that D.S. never identified him as her assailant, we cannot say that this is an appropriate basis for reversal when D.S. referred to Tapke by name as her assailant, and when her mother identified Tapke as the man whom she and D.S. had lived with on Trevor Avenue.

[*P91] Tapke also maintains that there was no evidence offered by the state that he had raped or had sexual contact with D.S. on November 20, 2004. He notes that D.S. testified that she could not

17

remember any sexual contact on that date. But Tapke's confession that he touched D.S. in her pubic region, that she touched his penis, and that he was aroused was admitted into evidence during the state's case. Further, D.S.'s medical records were admitted into evidence, and they contained the social worker's report. The report said, "[P]atient states the last incident happened about 6 months ago when she went on a visit [with] her sister. Patient states she was in the bed [with] her sister * * * Patient states [Tapke] woke her up and put his hands in her privates * * * Patient states she was able to wedge herself between the wall and her sister and 'nothing else happened.' " (In the report, patient was abbreviated "pt." Dr. Shapiro testified that "pt" meant "patient.")

 [*P92] Tapke also argues that there was no evidence to support the element of "force." But the Ohio Supreme Court has held that "a person in a position of authority over a child less than thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint." *State v. Dye*, 82 Ohio St.3d 323, 1998 Ohio 234, 695 N.E.2d 763, syllabus. Here, we note that D.S. testified that Tapke had removed her clothing when he raped her. Further, both Tapke and D.S. testified that because Tapke had lived with her mother and was the biological father of her sister, they had a relationship similar to that of a step-parent and a stepchild. Finally, D.S. testified that Tapke had told her not to tell anyone about what they were doing; otherwise they would both go to jail. We hold that this evidence was sufficient to support the jury's finding of "force."

 [*P93]  Tapke insists that "it defies rational belief" that D.S. was raped by an adult man, yet her hymen suffered no lacerations and was still intact. But Dr. Shapiro testified that his findings from D.S.'s physical examination did not negate a finding of sexual abuse. In fact, he testified that most victims of child sexual abuse had "normal" examinations.

 [*P94]  Next, Tapke argues that it was irrational for the jury to acquit Tapke of the August 2003 rape charge but to find him guilty of the other rape charges. Tapke presumes that, to acquit on the one charge, the jury had to have concluded that D.S. was a "liar." Not necessarily so. Given that Tapke had confessed to some sexual touching on November 20, 2004, and admitted in his confession to some inappropriate behavior at Trevor Avenue, the jurors may have thought that he was less than credible but believed that they had no choice but to acquit him for the August charge, because his mother had testified that Tapke was never alone with D.S. on that date. Regardless, considering the evidence presented, including the expert's testimony regarding how to determine whether a confession was

false, we cannot say that the jury lost its way in finding Tapke guilty of two counts of rape and two counts of gross sexual imposition.

[*P95] Accordingly, we conclude that Tapke's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, and that the trial court did not err in denying his Crim.R. 29 motion for an acquittal. The tenth, eleventh, and twelfth assignments of error are overruled.

*State v. Tapke, supra,* ¶¶ 85-95.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was adopted as a matter of Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In deciding an insufficiency of the evidence claim, the Sixth Circuit requires district courts to accord two levels of deference to state court decisions under Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"):

> In an appeal from a denial of habeas relief, in which a petitioner

challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. Ohio 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

In the Traverse, Petitioner argues that the only evidence against him was the testimony of D.S., the purported victim. That is not so. As indicated by the court of appeals, the jury had before it Mr. Tapke's own admission of conduct which constitutes gross sexual imposition under the statute and the victim's medical records. This Court cannot say that the court of appeals resolution of this claim was an objectively unreasonable application of *Jackson v. Virginia, supra.*[2] Ground Three should be denied on the merits.

---

[2]While the court of appeals did not cite *Jackson* or other Supreme Court law, it did use the correct federal standard, relying on its own prior decision in *State v. Jordan,* 167 Ohio App. 3d 157 (Ohio App. 1st Dist. June 2, 2006), which in turn relied on the Ohio Supreme Court's adoption of the *Jackson* standard in *State v. Eley*, 56 Ohio St. 2d 169, 383 N.E. 2d 132 (1978).

**Ground Four: Confrontation Clause**

In Ground Four Petitioner asserts his rights under the Confrontation Clause of the Sixth Amendment were violated by the use at trial of testimonial statements made by the purported victim to personnel and social workers at a child abuse facility, personnel who did not testify.

Mr. Tapke's Eighth Assignment of Error on direct appeal was

> 8. The trial court erred to the prejudice of appellant's rights under the Sixth and Fourteenth Amendments to the U.S. Constitution and Ohio Constitution Art. I § 10 by admitting the medical records of the victim, in permitting her to read from a portion of that report, and to testify as to a conversation with her cousin.

(Quoted at Return of Writ, Doc. No. 8, PageID 55.)

The court of appeals decided this assignment of error as follows:

> [*P65]  In his eighth assignment of error, Tapke argues that the trial court erred (1) by allowing the victim to refresh her recollection with a written document prepared by a social worker; (2) by allowing into evidence the victim's medical records, which contained statements that the victim had made to a social worker, who did not testify at trial; and (3) by allowing D.S. to testify about a conversation she had with her cousin.

> [*P66]  Tapke argues that D.S. should not have been allowed to refresh her recollection, under Evid.R. 612, from a written document prepared by the social worker who had interviewed D.S. at the hospital, but who did not testify at trial. Upon review of the record, we hold that there was no error. Evid.R. 612 does not require that the document used to refresh the witness's recollection be one actually prepared by the witness. *State v. O'Keefe*, 11th Dist. Nos. 2002-A-0015 and 2002-A-0048, 2004 Ohio 5300.

> [*P67]  Next, Tapke argues that the court erred in admitting D.S.'s medical records, which contained the social worker's report, into evidence. Citing *Crawford v. Washington*, (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L. Ed. 2d 177, Tapke contends that the medical records contained testimonial statements made by the social worker and that these statements were admitted into evidence in violation of his constitutional rights under the Confrontation Clause, as the social

worker did not testify at trial and Tapke did not have a prior opportunity to cross-examine her.

[*P68]  The Sixth Amendment's Confrontation Clause guarantees that "in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In *Crawford*, the United States Supreme Court held that out-of-court statements that are testimonial in nature are barred under by the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the trial court. *Id*. at 68. Therefore, the threshold issue we must determine is whether the statements in the social worker's report were testimonial. *State v. Crager*, 164 Ohio App.3d 816, 2005 Ohio 6868, 844 N.E.2d 390, at P28.

[*P69] While the Supreme Court in *Crawford* did not provide an exact definition of the term, it noted that, at a minimum, "testimonial" statements include prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and statements made during police interrogations. *Crawford, supra*, at 68. The Ohio Supreme Court has held that a testimonial statement includes one made "under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *State v. Stahl*, 111 Ohio St.3d 186, 2006 Ohio 5482, 855 N.E.2d 834, citing *Crawford, supra*, at 68.

[*P70]  Before applying Crawford to the facts in this case, we need to specify who the out-of-court declarant was in the social worker's report. Tapke argues that the report was made up of statements by the social worker. But a review of the social worker's report reveals that it was a summary of D.S.'s statements made during the interview. Almost each sentence of the report begins with the words "Patient states * * *." Dr. Shapiro testified that these statements made by D.S. to the social worker during the interview were reviewed by him for purposes of diagnosing  and treating D.S. Therefore, we review the sentences in the report that begin with "Patient states" as out-of-court statements made by D.S., not by the social worker.

[*P71]  Although Tapke objected to the admission of the medical records at trial, he did not state his reason. Based on his argument with respect to the social worker's report, it appears that he was objecting to all the statements that D.S. made to the social worker. But based on the context of his argument in his appellate brief, it appears that he is most concerned that D.S. told the social worker that on November 24, 2004, "[Tapke] woke her up and put his hands in her privates." At trial, D.S. could not recall if any sexual conduct had occurred on that date. While we have only noted this particular

statement, all of D.S.'s statements concerned the sexual abuse she had suffered.

[*P72] Turning to D.S.'s statements, we note that, in general, courts have held that statements made by child-abuse victims to medical providers are not testimonial in nature. See, e.g., *State v. Sheppard*, 164 Ohio App.3d 372, 2005 Ohio 6065, 842 N.E.2d 561, at P30; *In re D.L.*, 8th Dist. No. 84643, 2005 Ohio 2320, P20. But most of those cases involved children who were younger than D.S. Regardless, in *State v. Stahl, supra,* the Ohio Supreme Court held that statements by an adult victim of sexual assault identifying her assailant to a nurse practitioner were nontestimonial. *Id.* The court noted that although the victim had been seen by a nurse in a specialized medical facility for sexual-assault victims and that facility assisted in gathering evidence for criminal prosecution, the unit's primary purpose was the care of its patients. Thus, statements made in the course of that care could not have objectively been believed to be for trial and were, consequently, not testimonial. *Id.* at 196-197, 2006 Ohio 5482, P39-40.

[*P73] Like the victim in *Stahl*, after informing the police and her parents of the sexual abuse, D.S. went to the emergency room, where the social worker interviewed her prior to her examination. Since D.S. had made her statements during an emergency-room examination, an objective witness would have believed that any statements made were for health-related reasons and not for use later at trial. We note that the social worker took D.S.'s history again at the Mayerson Center, which was the part of Children's Hospital specializing in child sexual abuse, after the emergency-room doctor had referred D.S. to the center. But, again, the primary purpose of this history was to assist Dr. Shapiro in his medical examination of D.S.

[*P74] Because there is no evidence of record that D.S. could have objectively believed that her statements would be available for use at a later trial, we hold that her statements were not testimonial. Even assuming arguendo that her statements were testimonial, we note that D.S. was called to testify at trial, providing Tapke with the opportunity to cross-examine her regarding the statements that formed the basis for the medical records and thus comporting with the standards for admissibility under *Crawford*. "When the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of prior testimonial statements." See *Crawford, supra*, at 59.

[*P75] Next, Tapke argues that the trial court erred in allowing D.S. to testify about a conversation she had with her cousin. We find no error in this instance. The trial court generally has broad discretion in the admission or exclusion of evidence, and in the absence of an

23

> abuse of discretion that results in material prejudice to a defendant,
> an appellate court should be slow to overturn evidentiary rulings.
> *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291.
> Here, D.S. testified that she had told her cousin about the abuse and
> that her cousin told her to "tell [D.S.'s] mom." Tapke has not shown
> how the admission of this evidence resulted in material prejudice to
> Tapke. The eighth assignment of error is overruled.

*State v. Tapke, supra*, ¶¶ 65-75.

As argued in the court of appeals, the eighth assignment of error included some questions of Ohio evidence law. Respondent correctly points out that this Court has no warrant to reconsider those questions (Return of Writ, Doc. No. 8, PageID 77-78) and indeed Mr. Tapke eschews any request for such consideration, relying entirely on his Confrontation Clause argument (Traverse, Doc. No. 21, PageID 1168). That is, he does not renew here his objections to allowing D.S. to refresh her recollection from the medical records or his objection to her testifying about a conversation she had with her cousin. Only branch 2 of the eighth assignment of error is here for consideration.

At trial, Mr. Tapke's counsel objected to admission of the medical records, but the court of appeals found he stated no reason for the objection at trial and Tapke points to no evidence which contradicts this finding. The court of appeals read the appellant's brief on direct appeal as objecting to the admission of testimonial statements made by the social worker in the medical records when Tapke had no chance to cross–examine her. *State v. Tapke, supra*, ¶ 67. The court of appeals found this was not an accurate reading of the admitted medical records because "a review of the social worker's report reveals that it was a summary of D.S.'s statements made during the interview. Almost each sentence of the report begins with the words 'Patient states ...'" *Id.* ¶ 70. Therefore it analyzed Mr. Tapke's claim as "objecting to all the statements that D.S. made to the social worker." *Id.* , ¶ 71.

If the court of appeals focus on D.S.'s statements was correct, then its decision was clearly

not an objectively unreasonable application of *Crawford v. Washington*, 541 U.S. 36 (2004), and its progeny because, even if the statements are regarded as testimonial, D.S. testified at trial and was available for cross-examination.

Moreover, the court of appeals had a basis in evidence for its conclusion that D.S.'s statements to the social worker were for purposes of diagnosis. Of course, the evidence is not unequivocal, given the role of the Mayerson Center in dealing with child sexual abuse. But the court of appeals' finding that the primary purpose was diagnosis is a finding of fact which can only be overcome in habeas corpus by clear and convincing evidence to the contrary, and Petitioner has not produced such evidence. Nor has Petitioner cited any Supreme Court or other case authority to the effect that a sexual abuse victim's statements to a hospital-based social worker should be treated as testimonial for *Crawford* purposes. In distinguishing testimonial and non-testimonial statements to police officers, the Supreme Court in *Davis v. Washington*, 517 U.S. 813 (2006), emphasized the difference between getting police assistance in an ongoing emergency (non-testimonial) from reporting past events to the police for criminal investigation. But the Court has not applied that distinction to statements to hospital personnel which could come within the traditional hearsay exception for statements made to obtain medical treatment.

But, says Petitioner, the court of appeals was wrong to focus on the statements of D.S. Instead, the problem is with the testimonial statements of the social worker (Traverse, Doc. No. 21, PageID 1167). However, he never tells the Court what testimonial statements the social worker made which are objectionable. As the Court of Appeals noted, virtually all statements of the social worker begin "Patient stated." Tapke had no need to confront the social worker about the content of those statements because he could directly confront D.S., the patient referred to. No reference is offered to any statement of the social worker which would have been testimonial, i.e., which would have had any relevance in proving the underlying offenses. The medical record is, of course,

double hearsay: the paper tells what the social workers says D.S. said. But the first level of hearsay comes within the exception for statements made for purposes of diagnosis, or at least that determination is one of state law not cognizable in federal habeas corpus. Aside from Confrontation Clause concerns, whether D.S.'s statements made to the social worker are hearsay admissible under the medical records exception is also a state evidence question. But under *Crawford* Petitioner has no Confrontation Clause claim based on the admission of D.S.'s statements in the medical records because she was available at trial for cross-examination.

Petitioner's Fourth Ground for Relief should therefore be dismissed with prejudice.

## Ground Seven: Ineffective Assistance of Trial Counsel

In his Seventh Ground for Relief, Petitioner claims he was denied the effective assistance of trial counsel both as to "the instances complained of herein, and otherwise as well." (Petition, Doc. No. 1, PageID 14.) The claimed instances of ineffective assistance of trial counsel are

1.      Failure to retain an expert on coerced confessions for the suppression hearing.

2.      Failure to object to prosecutorial misconduct during closing argument.

3.      Failure to demand an evidentiary hearing once the trial judge revealed the sleeping juror allegations.

4.      Failure to object to (a) the judicial notice of venue and (b) the jury instruction on the spousal relationship.

5.      Failure to object to the trial court's instruction of weighing Dr. Ofshe's testimony.

6.      Unavailability to Mr. Tapke during the last day of deliberations, allowing another attorney

to be with Mr. Tapke for the verdict.

(Traverse, Doc. No. 21, PageID 1170-1171).[3]  These are referred to in the following analysis as sub-claims 1 through 6.

On direct appeal, Mr. Tapke made the following claims of ineffective assistance of trial counsel:

1.  Failure to observe the sleeping juror(s) and/or to call the sleeping juror(s) to the trial court's attention during trial (Assignment of Error 3).

2.  Trial court error in entering judgment after a trial in which Petitioner received ineffective assistance of trial counsel (Assignment of Error 13). The sub-claims encompassed in this Assignment were "trial counsel should have objected to the prosecutor's misconduct, the juror misconduct, and the trial court's judicial notice of venue." (Assignment of Error 13 as paraphrased by the court of appeals at *State v. Tapke, supra,* ¶ 96.)

Thus the only claim of ineffective assistance of trial counsel made on direct appeal which is renewed here is sub-claim 4(a) on failure to object to judicial notice of venue.  For the reasons stated above in the analysis of Ground for Relief Five, the court of appeals' decision on this claim was not an unreasonable application of *Strickland.*

All the remaining sub-claims are procedurally defaulted.  Each was available on the record on direct appeal and thus could not have been raised in a post-conviction proceeding because of *res judicata. See State v. Perry, supra.*  Petitioner cannot excuse the failure to raise these sub-claims on direct appeal by claiming ineffective assistance of appellate counsel because he procedurally defaulted on that claim by never filing an application to reopen the direct appeal under Ohio R. App. P. 26(B) and the time for doing so has expired.

---

[3]The Court notes that these sub-claims are specified only in the Traverse, which did not give Respondent an opportunity to provide a detailed analysis of Petitioner's claims in Ground Seven.

Petitioner's claims of ineffective assistance of trial counsel in Ground Seven are either without merit (sub-claim 4(a)) or procedurally defaulted.  Therefore Ground Seven should be dismissed with prejudice.

## Conclusion

Based on the foregoing analysis, the Petition herein should be dismissed with prejudice.  Any analysis on a certificate of appealability should await a motion from Petitioner.

February 8, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).